IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF:                :        CASE NO. 06-10095
                                 :
ANDREA WHITE                     :        SECTION A
                                 :
DEBTOR                           :        CHAPTER 13

**REASONS FOR ORDER DENYING CONFIRMATION**

This matter came before the Court on June 21, 2006 as a hearing on Capital One Auto

Finance's Objection to Confirmation of Plan.

Present:

Kirk L. Myers, Counsel for Debtor
Stephen Wheelis, Counsel for Capital One Auto Finance
S.J. Beaulieu, Jr., Chapter 13 Trustee

Capital One Auto Finance ("Capital One") holds a lien on the Andrea White's ("Debtor")

automobile and filed the Objection to Confirmation of Plan because Debtor's proposed plan intends

to bifurcate it's lien and pay Capital One less than the contract interest rate.

**Jurisdiction**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 1325(a).

**Background**

The debtor, Andrea White, purchased a used 2002 Ford Taurus on May 2, 2005, from

LaPlace Ford, financing $11,126.50 at 22.85% interest over 60 months, through the dealership.

Debtor signed a retail installment contract that included sums for the purchase of the vehicle, sales

tax and fees, as well as sums for the purchase of Total Loss Protection Program ("Insurance

1

Deficiency") and Carefree Car Protection ("Extended Warranty") contracts.[1]  The Insurance

Deficiency contract was sold by Jim Moran and Associates, Inc. for the sum of $599.00.  It was

designed to protect Debtor from a loss of the vehicle should its insured value be less than the balance

due on the loan securing its purchase. The Extended Warranty contract was sold to Debtor by

Fidelity Warranty Services, Inc. for the sum of $1,500.00.  That contract insured Debtor against any

mechanical failures of the vehicle not covered by the factory warranty.  The purchase prices for the

Insurance Deficiency and Extended Warranty contracts were financed by LaPlace Ford and added

to the retail installment contract.  After the initial financing was complete, LaPlace Ford assigned

its interest in the loan and all collateral securing same to Capital One.

After her purchase, Debtor did not make a single loan payment to Capital One and

subsequently filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 15,

2006.  The Plan and Schedules list Capital One as a secured creditor, however the Plan proposes to

bifurcate the loan into secured and unsecured portions.  Debtor proposes to pay the secured portion

of the debt based on the value of the vehicle[2] with 8% interest over the life of the Plan.  The

---

[1]  The retail installment contract offered into evidence provides the following breakdown
of the sums financed:

| | |
|---|---|
| Cash price* | $8073.34 |
| Sales tax | 892.16 |
| Notarial fee | 62.00 |
| Subtotal | $9027.00 |
| Extended Warranty | 1500.00 |
| Insurance Deficiency | 599.00 |
| Total financed | $11,126.50 |

* The cash price reflects a down payment of $1,500.00 on an original sales price of $9,573.34.

[2]  Debtor alleges that the vehicle has a value of $8,000.00 based on average between the
retail and trade in values published by the National Automotive Dealers Association.  Though
Capital One originally listed the value of the collateral as $10,924.00 on its proof of claim, at the

remaining amounts due Capital One are included in the unsecured class, projected to receive 100% of their claims over the life of the Plan, but without interest.

Capital One filed a proof of claim on April 4, 2006, alleging a total debt of $12,686.22 due as of the petition date.[3]  In its proof of claim, Capital One included the $599.00 and $1,500.00 advanced for the Extended Warranty and Insurance Deficiency contracts, plus interest on those amounts at 22.85% from May 2, 2005 through February 15, 2006.

Capital One objected to plan confirmation based on Debtor's proposed  bifurcation of  its claim, as well as Debtor's failure to pay interest on its entire claim at the contract rate.  Capital One argues that recent changes to the Bankruptcy Code prohibit Debtor from bifurcating its loan or reducing its interest rate below the contract rate. Alternatively, Capital One argues that interest at the *Till*[4] rate must be paid on its entire claim. Capital One also urges its right to additional charges which may accrue post petition under the terms of its contract including, but not limited to, attorney's fees.

Debtor filed a brief in support of her Plan and the confirmation hearing was continued from April 25, 2006 to May 30, 2006 to allow Capital One to file a reply brief.  Following the hearing on confirmation, the parties were given additional time to brief the issues presented.  Capital One filed

---

hearing on this matter, it stipulated to Debtor's value.

[3] Interest through the filing date was calculated by the creditor at $1,559.72 on a principal balance of $11,126.50.  By allocating accrued interest to the sums advanced for the Extended Warranty and Insurance Deficiency contracts versus the sales price, the claim can be divided into two parts; $2,392.37 for the contracts and $10,293.85 for the sale price of the vehicle.

[4]*Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951, 158 L. Ed. 2d. 787 (2004)(plurality opinion).

a post hearing brief, but despite being given the opportunity to submit a reply on or before July 24, 2006, Debtor did not file any additional pleadings.

## Discussion

Capital One's Claim and The Provisions of the Hanging Paragraph

The primary issues in this case revolve around recent enactments to the Bankruptcy Code. The Bankruptcy Abuse and Consumer Protection Act (BAPCPA) amended the relevant provisions of the Bankruptcy Code applicable to this case. Specifically, BAPCPA added an additional paragraph to 11 U.S.C. §1325(a), commonly referred to as the "hanging paragraph." It provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic][5] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

The parties have stipulated that Capital One holds a claim incurred within 910 days of the petition date and secured by a motor vehicle within the meaning of the statute. Since the hanging paragraph only affects purchase money security interests in motor vehicles purchased for the Debtor's personal use, additional inquiry is required to determine the applicability of the 'hanging paragraph' to this claim.

Is Capital One's Claim a Purchase Money Security Interest?

Purchase money security interests are not defined by the Bankruptcy Code. Therefore, the Court must look to state law to determine if Capital One's claim is a purchase money security

---

[5]The statute does not contain the word "period" after 910-day, however it is presumed that this is a typographical error and not intentional.

interest as contemplated by the statute. La. R.S. 10:9-103 provides that a purchase money security interest is a collateral interest, securing a purchase money obligation. Under the same statute, a purchase money obligation is defined as one incurred for the purpose of acquiring, in whole or in part, the collateral. La. R.S. 10:9-103, Uniform Commercial Code Comment 3 (West 2002) specifies that the price of acquisition includes expenses incurred in connection with acquiring the collateral, including sales taxes, duties, finance charges, interest, freight charges, or other similar obligations. Reviewing the Retail Installment Contract, the purchase price; sales tax; notary documentation; license, title, registration, and recordation fees; are purchase money obligations secured by a purchase money security interest.

The costs of the Insurance Deficiency and the Extended Warranty contracts are not costs of acquiring the vehicle. Both contracts were voluntarily acquired by Debtor and each contract is a separate asset, independent of the vehicle. The costs of acquisition were paid to third parties separate and apart from the dealer. Thus, the portion of this claim which represents the costs, interest and other charges attributable to these contracts is not a part of the purchase money security interest in the vehicle. Under the evidence presented, $2,392.37 of Capital One's claim is attributable to these items, leaving $10,293.85 as the portion of the claim attributable to the vehicle.[6]

Capital One also claims a purchase money security interest, by virtue of a separate assignment and the execution of the retail installment contract, over Debtor's rights in the Extended

---

[6] La. R.S. §10:9-103(f) provides that to the extent purchase money collateral also secures an obligation that is not a purchase money obligation, the purchase money security interest does not lose its status.

Warranty and Insurance Deficiency contracts.[7]  As such, this portion of the debt might be subject to the application of the hanging paragraph as the sums were used to purchase the contracts and allegedly secure the repayment of those advances.[8]  This analysis turns on whether Capital One has a purchase money security interest in the Extended Warranty and Insurance Deficiency contracts.

Both the Extended Warranty and Insurance Deficiency contracts are considered policies of insurance under the Louisiana law.  La.R.S. 6:969.26 n.2 , explains that Insurance Deficiency, or "gap" coverage, falls under the definition of insurance contained in La.R.S. 22:6.  Similarly, La.R.S.22:1800(5) defines extended warranty agreements as vehicle mechanical breakdown insurance.  Louisiana's version of the Uniform Commercial Code excepts from the definition of purchase money security interests, ". . . a transfer of an interest in or an assignment of a claim under a policy of insurance, other than life insurance and other than an assignment by or to a health-care provider of a health-care-insurance receivable . . .."[9]  Capital One, therefore, cannot hold a purchase money security interest in the Insurance Deficiency or Extended Warranty contracts because they

---

[7]  The retail installment agreement provides:

B.  Security Interest: To secure payment of the monthly payments and all other amounts due under this contract...Buyer gives the Creditor a security interest in the property and in all parts and other goods put on the property, or added to the property as improvements, additions, or replacements and all money or goods received for the property and all premiums and service contracts financed for you.  *Buyer assigns all insurance charges* that have been financed *and all proceeds of insurance* to the Creditor until all amounts due under this contract are fully paid in cash.  Unearned insurance charges paid to the Creditor may be credited to Buyer.  The credit will be to the last payment due (emphasis supplied).

[8]  The hanging paragraph applies to purchase money security interests 1) over a vehicle purchased within 910 days of filing and upon which the claim is based; *or* 2) securing debts incurred within one year of filing and collateralized by any *other* thing of value.

[9]  La.R.S. § 10:9-109(d)(8), *see also, In re Barton Industries, Inc.*, 104 F.3d 1241, 1246 (10th Cir.1997)(holding that security interest in insurance is excepted from Uniform Commercial Code).

are insurance policies and the statutory provisions defining, regulating, and controlling purchase money security interests specifically except their application. Therefore, Capital One is not entitled to treatment under the hanging paragraph as to the sums advanced or accruing under the portion of the claim attributable to these contracts.

Was Debtor's Vehicle Acquired for Personal Use?

Having determined that the portion of Capital One's claim attributable to the purchase price of the vehicle is a purchase money security interest within the meaning of the hanging paragraph, the Court must determine if Debtor purchased the vehicle for her personal use.

Debtor stipulated at trial that she uses her vehicle as transportation to and from work as well as for all other general transportation needs.[10] Because Debtor uses her vehicle to drive to and from work, she asserts that it is a tool of the trade as defined by La.R.S.§ 13:3881 and therefore is not a vehicle for personal use.

La. R.S. §13:3881A(2)(d)[11] describes property that is exempt from seizure, and lists, *inter alia*, "property necessary to the exercise of a trade, calling, or profession by which [the debtor] earns his livelihood, which shall be limited to the following . . . [s]even thousand five hundred dollars in equity value for one motor vehicle per household, used by the debtor and his family household." Prior to the amendments of 2003, La.R.S. §13:3881A(2)(d) exempted from seizure only those motor

---

[10] The parties stipulated that Debtor drives 90 miles round trip to and from work 5-6 days per week and that the vehicle was purchased with 43,689 miles. In the approximate 10 months following purchase, Debtor drove the vehicle 18,311 additional miles. Based on these stipulations almost all of the miles driven would be for the purpose of going to and from work.

[11] Debtor does not specifically cite this paragraph in her Memorandum, however, it is the only portion of the statute that appears relevant. While the Court does not think this statute is controlling on the issue, it is instructive and is therefore discussed.

vehicles used in the trade, calling or profession of the debtor.[12]   The jurisprudence was clear that vehicles used to transport the debtor to and from work were not exempt unless they were also required in the exercise of debtor's employment after he arrived at his job site.[13]   The amendment represented a change in the law in so far that it allowed debtors an exemption of up to $7,500.00 in value for a motor vehicle needed to transport the debtor to and from work.

The statute explains, "The one motor vehicle *may* be used in exercising a trade, calling or profession *or* used for transportation to and from the place at which the debtor earns his livelihood"(emphasis added).[14] Thus, rather than defining a motor vehicle as a tool of the trade, the statute was expanded to allow vehicles not otherwise qualifying as tools of the trade an exemption. The statute does not, however, state that a vehicle used for transportation to and from work *is* a business vehicle or tool of the trade.   Rather, the statute merely recognized an exemption for vehicles necessary to transport Debtor to and from her employment.   Further, the purpose of the statute is not to distinguish between personal and business use, but to carve out a category of personal property exempt from seizure so that Debtor may continue to earn a living without risk of becoming a burden on the state.[15]

Under Federal law, Internal Revenue Service guidelines provide that vehicles used for transportation to and from work are not business property and therefore expenses associated with

---

[12] *See*, La. R.S. § 13:3881 historical and statutory notes (West 2006).

[13] *See*, *Holt v. Flournoy*, 24 So.2d 171 (La.App. 2nd Cir. 1945), *Morris-Wilson Buick Co. v. Robertson*, 146 So. 339 (La.App. 2nd Cir. 1933) *see also*, *In re Trotter*, 97 F.Supp. 249 (W.D.La. 1951) (automobile considered tool of the trade when required by debtor's employer and necessary for debtor to perform his job).

[14] La. R.S. § 13:388(A)(2)(d)(West 2006).

[15] *See, In re Belsome*, 434 F.3d 774 (5th Cir. 2005).

their purchase and maintenance are not deductible as business expenses for income tax purposes.[16]

Taxpayers who use their vehicles both for business and personal reasons may deduct a mileage per diem or a percentage of expenses incurred for their upkeep or operation based on total relative use for business.  However, even in these circumstances, taxpayers may not deduct miles driven to and from work or include those miles in the calculation of miles driven for business use.  Using a vehicle to drive to and from work does not, under IRS regulations, make the vehicle a business asset.

When all else fails, common sense should guide.  The American Heritage Dictionary 925 (2nd Ed. 1991) defines "personal" as "[o]f or pertaining to a particular person . . .."  In other words, not related to business or another.  This vehicle is nothing other than one used for Debtor's personal benefit.  Based on Debtor's stipulations, Debtor acquired her vehicle for both personal use and for transportation to and from work.  Given that she did not use the vehicle for business after she arrived at her employment, received no reimbursements from her employer for its use, and deducted no expenses from her income for tax purposes, the Court cannot conclude that the vehicle is a business asset.  At the time of purchase, Debtor even indicated on the retail installment contract that the vehicle was being acquired for personal use.  Based on Debtor's overall use of the vehicle and the entire percentage of miles driven, its primary use was for the benefit of Debtor personally.  Therefore, the Court concludes that the vehicle was purchased for personal use within the meaning of the Bankruptcy Code.

Does the Hanging Paragraph Render Capital One's Loan Unsecured?

As discussed above, this Court has determined that the hanging paragraph applies to a portion of the Capital One Claim.  The Court must next determine the required treatment for that

---

[16]26 C.F.R. §1.261-1(b)(5)(a).

claim under the Bankruptcy Code.  Debtor argues that since the provisions of the hanging paragraph

exclude §506's application to Capital One's claim, they eliminate its status as a secured claim.

Debtor's argument maintains that since  the provisions of §1325(a)(5) only apply to "allowed

secured claims" they are also inapplicable.  The significance of this argument affects not only the

calculation of Capital One's claim for plan purposes, but also the requirements that must be satisfied

in order for the Debtor to confirm her Plan over Capital One's objection.

Theretofore, the definition of a "secured claim" was found by reference to §506 of the

Bankruptcy Code.  Section 506 also provides the means for calculating the amount of the claim.

Thus, once a claim was deemed secured and its value was calculated, as provided by §506,

§1325(a)(5) itemized the requirements for a claim's treatment in a plan. Section 506(a)(1) provides

in part:

> (a)(1)  *An allowed claim of a creditor secured by a lien on property in which the
> estate has an interest* or that is subject to setoff under section 553 of this title, *is a
> secured claim* to the extent of the value of such creditor's interest in the estate's
> interest in such property, or to the extent of the amount subject to setoff, as the case
> may be, and is an unsecured claim to the extent that the value of such creditor's
> interest or the amount so subject to setoff is less than the amount of such allowed
> claim.  Such value shall be determined in light of the purpose of the valuation and
> of the proposed disposition or use of such property, and in conjunction with any
> hearing on such disposition or use or on a plan affecting such creditor's interest.
> (emphasis  supplied)

Since the definition of 'secured claim' is not found in any other section of the Bankruptcy

Code, Debtor argues that the elimination of §506's application to Capital One's claim effectively

renders Capital One's claim unsecured.

10

In response, Capital One refers this Court to several opinions on this issue recently rendered

by other Bankruptcy Courts.[17]   The cited cases generally hold that §506 is not 'definitional' and

therefore not the exclusive means by which determination of secured status may be made.   They

reason, by reference to other sections of the Bankruptcy Code, that the claim can be allowed as

secured.   The analysis begins with §502, which provides the mechanism for how claims against the

estate are allowed.   The courts then move to §101(37), which defines a  "lien" as a charge against,

or interest in, property to secure payment of a debt or performance of an obligation.   A conclusion

is then drawn that since the claim is both allowed and secured by a lien valid under state law, it must

be an "allowed secured claim."[18]   While the practical logic of this analysis is tempting, it is not

without limitation.

First and foremost, the notion that §506 is not definitional is clearly at odds with United

States Supreme Court precedent.[19]   It is also at odds with the plain reading of §506 which is titled,

---

[17]   Cases cited by Capital One, plus others considered by the Court include: *In re Brown*,
346 B.R. 246 (Bankr. M.D. Ga. 2006); *In re Brown*, 339 B.R. 818 (Bankr. S.D.Ga. 2006); *In re
Murray*, 346 B.R. 237, (Bankr. M.D. Ga. 2006); *In re Lowder*, 2006 WL 1794737 (Bankr. D.
Kan. 2006); *In re Brooks*, 344 B.R. 417 (Bankr. E.D.N.C. 2006); and *In re Bufford*, 343 B.R. 827
(N.D. Tx. 2006).

[18]*See, e.g., In re Brown*, 339 B.R. 818 (Bankr. S.D.Ga. 2006).

[19]   *See In re Ron Pair Enterprises, Inc.*,, 489 U.S. 235, 238, 109 S. Ct. 1026, 1029, 103 L.
Ed. 2d 290 (1989).  The cases cited in fn 13 uniformly refer to *Dewsnup v Timm*, 502 U.S. 410,
112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) for the proposition that §506 is not definitional. The
apparent conflict between *Ron Pair* and *Dewsnup* is easily resolved.  *Dewsnup* involved a
chapter 7 case, and an apparent conflict *within* §506.  *Dewsnup* considered whether or not
§506(d) allowed the stripping of a residential lien to its "value," as defined by §506(a).  The
Court held that since there was no indication that Congress intended to depart from the pre-Code
rule that liens pass through bankruptcy unaffected, §506(a) could not be used to strip the lien
under §506(d).  Obviously, under both chapter 11 and 13, the rights of secured claims may be
affected by a plan.  As such, *Dewsnup* is clearly limited to its facts. More importantly, the
*Dewsnup* Court cautioned ". . . [W]e express no opinion as to whether the words 'allowed
secured claim' have different meaning in other provisions of the Bankruptcy Code." *Dewsnup*,

11

"Determination of Secured Status."  The two leading commentators on Chapter 13, Judge Keith Lundin and *Collier on Bankruptcy* both strenuously question the wisdom of recognizing a secured claim without reference to §506.[20]

The validity of these criticisms are buttressed when one considers that many security interests, otherwise valid under state law, are unenforceable in bankruptcy.  For example, liens for rent, as well as, certain liens created by seizure or attachment are not recognized in bankruptcy though enforceable under state law.[21]  Tax liens may be subordinated under §724(b), other valid state law liens under §506(c).  Sections 101(37) and 502 also fail to specify that the lien *must be against property of the debtor's estate*.[22]  Therefore if this line of reasoning were carried to its logical conclusion, a debt secured by a third party's property could just as easily qualify as an "allowed secured claim" in bankruptcy.

State law may control the requirements for creating and perfecting a lien, but it is the purview of the Bankruptcy Code to both recognize the lien and provide for its treatment.  It is therefore incorrect to hold that every allowed claim secured by a valid state law lien is an "allowed secured claim" in bankruptcy.

This line of jurisprudence also argues that Congress could not have intended to single out this type of claimant for unsecured treatment.  But there are ample examples of secured claims,

_____

at 214, fn3.

[20]  Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Edition* (2000 & Supp. 2006) at § 451.1; 8 *Collier On Bankruptcy*, ¶ 1325.06[1][a] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. Rev.2006)

[21]  11 U.S.C. § 545.

[22]  This requirement is only found by reference to §506.

whose interests are stripped, reduced or otherwise modified from those allowed under state law.[23] Distinct treatment, or even disparate treatment, under the Code for different types of claims is neither unusual or exceptional.

Therefore, simply because a claimant holds a claim, secured by a valid state law lien, does not make the claim an "allowed secured claim" for Bankruptcy Code purposes. With all due respect to my colleagues, this Court rejects the reasoning of this line of cases.

In order to hold an allowed claim, the claimant must file a proof under §501. Section 502 then provides for its allowance. Under §502, the allowed claim is calculated by taking the sums due as of the petition date, and specifically excluding unmatured interest or unaccrued other charges due under the contract or state law. If the claim is not otherwise subject to objection, the claim is allowed. However, it is only §506 that provides for the determination of secured status. Section 506 begins by assuming that the claim has been allowed and is secured by a valid lien. It then requires that the lien attach to property of the estate. Only in this event is the claim deemed a "secured claim" for purposes of the Bankruptcy Code. But, if §506 is made inapplicable to the claim by the hanging paragraph, it may in fact be a claim secured by a lien but not qualify for treatment as an "allowed secured claim" under the Bankruptcy Code.

Congress having created the definition of a 'secured claim' under §506 is free to expand or limit the definition and its application. Section 1325(a)'s hanging paragraph states, "*For purposes of paragraph (5)* [of section 1325(a)], section 506 shall not apply to a claim *described in that*

---

[23] For example, consensual liens secured by the debtor's primary residence receive differing treatment from other secured claims. *See* §1322(a). Liens against property subject to an exemption may be stripped under §522(f). The Code also contains exceptions to discharge for certain claims under §523.

*paragraph*..(emphasis supplied)."

Section 1325(a)(5) begins, "With respect to each allowed secured claim provided by the plan..."  So, with respect to an allowed secured claim that also qualifies as purchase money security interest in a motor vehicle, the hanging paragraph states that §506 shall not be applicable.  The conundrum is in determining to what extent §506 is to be ignored.

After much research and thought, this Court concludes that the exclusion of §506 is simply, and only, for purpose of determining if the plan, as proposed, satisfies the requirements of §1325(a)(5) as to the claim.  In other words, the effect of §506's exclusion is not complete but serves to eliminate only those provisions that might affect confirmation and the required treatment of the creditor's claim.  Thus, it is designed to disassociate both the rights granted and limitations imposed by §506 on secured claims *vis a vis* the confirmation process in chapter 13.  What follows from this reasoning is that a qualifying purchase money security interest claim is not limited to the value of the collateral securing the debt; nor is it allowed post petition interest or other charges which may accrue on the claim, regardless of the existence of equity.   Instead,  the treatment of the purchase money security interest claim is entirely dependent upon the rights provided in §1325(a)(5).

I base this reasoning in part on the modifying language contained in the hanging paragraph itself.  The exclusion of §506's application is *for purposes of* §1325(a)(5).[24]  Section 506 is therefore otherwise applicable to these claims for all other purposes which would include the right to seek adequate protection pending confirmation and relief from the stay.  The wording of the paragraph

---

[24]The American Heritage Dictionary 1006 (2nd Ed. 1991) defines "purpose" as "[t]he object toward which one strives or for which something exists; goal; aim."  Thus, § 506 is inapplicable to a determination of whether or not the plan is properly confirmable and its provisions will not impact, or otherwise modify, the conditions imposed by § 1325(a)(5), which govern treatment of the claim, and do not the define its status as secured or calculate its amount.

also indicates that the claim has already qualified as an "allowed secured claim" under both §§506

and 1325(a)(5).  Otherwise, there would be no need for the hanging paragraph to exclude these

claims from the effects of §506 *for purposes of* §1325(a)(5).

Section 1325(a)(5) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if-
(5) with respect to each allowed secured claim provided by the plan -
    (A) the holder of such claim has accepted the plan;
    (B)(i) the plan provides that -
        (I) the holder of such claim retain the lien securing such claim until
        the earlier of -
            (aa) the payment of the underlying debt determined under
            nonbankruptcy law; or
            (bb) discharge under section 1328; and
        (II) if the case under this chapter is dismissed or converted without
        completion of the plan, such lien shall also be retained by such holder
        to the extent recognized by applicable bankruptcy law; and
     (ii) the value, as of the effective date of the plan, of property to be
    distributed under the  plan on account of such claim is not less than the
    allowed amount of such claim; and
     (iii) if -
        (I) the property to be distributed pursuant to this subsection is in the
        form of periodic payments, such payments shall be in equal monthly
        amounts; and
        (II) the holder of the claim is secured by personal property, the amount
        of such payments shall not be less than an amount sufficient to provide
        to the holder of such claim adequate protection during the period of
        the plan; or
    (C) the debtor surrenders the property securing such claim to such holder

## The Amount of Capital One's Secured Claim

Capital One asserts that it is entitled to contractual interest on its claim.  The provision

awarding interest, post petition, on a secured claim is found in §506(b) which states:

To the extent that an allowed secured claim is secured by property the value of
which, after any recovery under subsection (c) of this section is greater than the
amount of such claim, there shall be allowed to the holder of such claim, interest on
such claim, and any reasonable fees, costs, or charges provided for under the
agreement or State statute under which such claim arose.

15

But by virtue of the hanging paragraph, §506 is inapplicable to requests for interest or other charges as part of a plan.  Section 502 defines Capital One's claim as the amounts due *as of the filing date.*  As a result, post petition interest is not included in Capital One's claim unless provided by some other provision of the Code.  No such provision exists.

Therefore, in order to confirm her plan, Debtor is not required to provide Capital One with contractual interest or reimbursement of other charges accruing post petition as part of the claim.  By the same token, the claimant's secured claim for purposes of the plan, is not limited to the value of the collateral as required by §506(a)(1) nor may it be bifurcated.  Therefore, Capital One holds a claim in the amount of $10,638.16 which must be paid under the terms of §1325(a)(5).

Is Capital One Otherwise Secured As To The Amounts Advanced For The Insurance Contracts?

Having concluded that Capital One does not hold a purchase money security interest for the amounts advanced to acquire the Insurance Deficiency or Extended Warranty contracts, Capital One could still hold a secured claim for these sums.  Though the provisions of the hanging paragraph would be inapplicable, §506 might still afford Capital One some additional rights.  Capital One alleges a security interest was created under the terms of the retail installment contract over the vehicle, proceeds of the insurance contracts, and the contracts themselves.  For the reasons previously stated, this alleged security interest is not a purchase money security interest under La.R.S. 10:9-103.[25]

---

[25]  The Uniform Commercial Code allows the securitization of proceeds.  However, an interest in proceeds is perfected only when the security interest *in the original collateral* is perfected.  *See, e.g.,  In re Grant*, 242 B.R. 800, 804 (Bankr. D. N.H. 1999)(creditor did not have a present interest in an extended warranty because it took a security interest in the proceeds received from cancellation or termination only, and did not reserve the right to cancel the policy), *and*, *In re Dews*, 191 B.R. 86 (Bankr. E.D. Va. 1995) (language of installment sales contract insufficient to give creditor a security interest in the contract itself).  As previously held,

Both Debtor and Capital One have stipulated that Capital One holds a valid, perfected security interest in the vehicle. Therefore, the vehicle secures the repayment of the sums advanced for the purchase of the two insurance contracts. However, because the hanging paragraph does not apply to these advances or the security interest created to secure their repayment, the Court must look to the provisions of §506 to determine if Capital One holds a secured claim. As previously stipulated by the parties, the value of the vehicle is $8,000.00. The claims of Capital One under the purchase money security interest portion of the claim are $10,924.00, a sum in excess of the vehicle's value. Therefore, under §506(a) there is no equity in the vehicle to secure these non-purchase money security interest claims. As a result, this Court finds that Capital One's claim for sums advanced for the purchase of the Extended Warranty and Insurance Deficiency contracts are not secured by the vehicle.

Having concluded that the vehicle does not secure the repayment of these sums, Louisiana law offers two other possible avenues for Capital One to perfect its interest in the contracts or their proceeds. The first involves a determination as to whether or not the retail installment contract is an insurance premium finance agreement and the second option is to determine whether Capital One is secured under any other provision of the Louisiana Civil Code.

Insurance Premium Finance Agreements

The retail installment contract does not meet the requirements necessary to be considered an insurance premium finance agreement. La.R.S.9:3550(A)(4) defines a premium finance agreement as:

---

Louisiana's version of the Uniform Commercial Code excepts, from its application, a security interest in insurance contracts. Since the contracts themselves cannot be perfected under the Uniform Commercial Code, neither can their proceeds.

17

an agreement by which an insured or prospective insured promises to pay to an insurance premium finance company the amount advanced or to be advanced under the agreement to an insurer or to an insurance agent or broker in payment of premiums on an insurance contact together with a service charge as authorized and limited by this Section. *A premium finance agreement shall not include an agreement* on the part of an extender of credit *to finance* credit life, credit disability, and *credit property insurance coverage as an incident to a consumer credit transaction* subject to this Chapter or subject to any other applicable provision of Louisiana or federal law. (emphasis added).

La. R.S. 22:6(16)(b) defines 'credit property insurance' as:

Insurance generally sold in connection with a credit transaction and limited to partially or wholly extinguishing the credit obligation, including but not limited to agreements, contracts, or policies of insurance containing any of the following: involuntary unemployment, vendors single interest, vendors dual interest, and credit fire or GAP. The credit obligation is the total sum payable, including all loan finance charges and credit service charges, pursuant to the credit transaction

Therefore, the Insurance Deficiency contract is specifically exempted from the definition of an insurance premium finance agreement. Furthermore, the retail installment contract does not comply with the requirements of La. R.S. § 9:3550(D)(2) and (3) because it does not contain the name and place of business of the insurance agent, nor does it contain or refer to a separate document itemizing the premium cost. As the retail installment contract does not comply with the requirements of insurance premium finance agreement, no security interest in the contracts or their proceeds can be perfected under this provision.

Pledge

The final step to determine if Capital One holds a secured claim, is to look to the Louisiana Civil Code. Under the Civil Code, Capital One's security interest in the contracts may be perfected under the laws of pledge. The Louisiana Civil Code describes the requirements of pledge:

...[T]his privilege shall take place against third persons only in case the pledge is proved by some written instrument, in which shall be stated the amount of the debt

intended to be secured thereby and the species and nature of the thing given in pledge; or the description of the thing pledged may be contained in a list or statement annexed to the instrument of pledge and giving its number, weight, or descriptive marks. LA.C.C. art. 3158(A).

Thus, there are three requirements for a creditor to perfect its interest in an insurance policy under the law of pledge. First, there must be a written instrument stating the amount of the debt intended to be secured along with a detailed description of the collateral pledged, second, the debtor must deliver the written obligations, and third, there must be good faith.[26] The retail installment contract is insufficient to satisfy the first requirement of pledge.

The retail installment contract does not specify the contracts or the proceeds pledged. The retail installment contract provides:

> To secure payment of the monthly payments and all other amounts due under this contract (without this contract being a waiver by the Creditor of the vendors lien and privilege which the Creditor expressly reserves), Buyer gives the Creditor a security interest in the property, and in all parts or goods put on the property, or added to the property, as improvements, additions, or replacements, and all money or goods received for the property, and all premiums, and service contracts financed for you. Buyer assigns all insurance charges that have been financed and all proceeds of insurance to the Creditor until all amounts due under this contract are fully paid in cash. Unearned insurance charges paid to the Creditor may be credited to Buyer. The credit will be to the last payments due.

The contract grants a security interest in "insurance charges," "premiums received" and "insurance proceeds," but it does not grant an interest in the actual Insurance Deficiency contract. It also purports to assign "service contracts financed" but none of the language identified is sufficient, in this Court's opinion, to adequately identify the property pledged.

---

[26] There is no present requirement that the insurer receive knowledge of any assignment. LA.C.C. art. 3158 was amended in 1989 to remove the following language from the article: "shall be valid as well against third persons as against the pledger thereof, if made in good faith, provided that where the pledge of instruments not negotiable, the debtor must be notified thereof . . .."

19

Louisiana law is clear that the act of pledge must describe, in sufficient detail, the property given in pledge.[27]   When dealing with incorporeal rights, incapable of physical delivery, this requirement is critical.  The agreement in question fails to describe the contracts by parties, date, or even purpose.  It fails to provide *any* specificity such that a third party may be put on notice as to the property pledged.

This Court, therefore,  finds that Capital One does not have a security interest in either the Insurance Deficiency or Extended Warranty contracts, their proceeds, or premiums. As a result, the additional claims of Capital One, not comprising the purchase money security interest in the vehicle, are unsecured.

Treatment of the Secured Claim

Section 1325 (a)(5) requires the plan contain three main elements of relief for the secured claimant.  They are:

1) The holder of an allowed secured claim must retain its lien until the payment of the underlying debt or discharge under §1328;

2) The value, as of the effective date, of property distributed under the plan cannot be less than the allowed claim; and

3) If the claim is secured by personal property and to be paid in periodic payments, the payments must be sufficient to provide adequate protection during the period of the plan.

Retention of Liens

Debtor's Plan provides that Capital One will retain its lien until the 'secured portion' is repaid. Section 1325(a)(5)(B)(i)(I) requires that the lien be retained until the earlier of 1) the repayment of the underlying debt determined under nonbankruptcy law or 2) discharge under §1328.

---

[27] *Madding v. Hoover*, 44 So.2d 184 (La.App. 2nd Cir. 1950).

20

Capital One argues that the lien must be retained until the entire debt, calculated under the contract, and without reference to bankruptcy law, is paid.

As with any claimant, a lien against property of the debtor will pass through bankruptcy unaffected unless, under the terms of a confirmed plan, the obligations due to the creditor are satisfied. Section 1328 provides that as soon as practical, after completion by the debtor of all payments under the plan, the court shall grant the debtor a discharge of all debts provided for by the plan.[28] The discharge of the debt releases the lien, for a lien is an accessory obligation which cannot exist without an underlying debt.[29] Thus, upon full performance of the obligations due to Capital One under a confirmed plan, Debtor would be entitled to a release of the lien.

Capital One argues that the lien must be retained until the entire debt, calculated under state law is paid. Under Capital One's interpretation, all charges due under state law including, but not limited to, post-petition interest and attorney's fees as allowed by contract, would have to be paid prior to the release of its lien. But this interpretation would render meaningless the provisions of §§502(a), and 1325(a) which calculate the claim and provide for its satisfaction. As previously stated, the calculation of Capital One's secured claim, is achieved by reference to §502 and excludes any amounts for post petition interest or other charges which might accrue under the contract or state law. Thus to interpret §1325(a)(5)(B)(i)(I) as Capital One argues, is to read out of the Code the limitations imposed by §502. Section 1325(a)(5)(B)(i)(I) does not define the claim or its calculation. Section 1325 merely provides for treatment of the secured claim once it is defined by other provisions of the Bankruptcy Code. Therefore, in order to provide effect to all sections of the

---

[28]Subject to limitations set forth in 11 U.S.C. § 1328.

[29]11 U.S.C. § 1325(B)(i)(I)(bb)

Bankruptcy Code, §1325(a)(5)(B)(i)(I) can only require that Capital One retain its lien over the vehicle until the earlier of, satisfaction of the amounts due and as calculated under state law, *or* completion of Debtor's obligations under the confirmed plan.

Since this Plan provides for the retention of Capital One's lien until the sum of $8,000.00 has been paid, with interest at 8%, it is not confirmable. The sums provided are less than the amount of Capital One's secured claim as calculated under this opinion.

The Value of Proposed Distributions

Section 1325(a)(5)(B)(ii) provides that the value, as of the effective date of the plan, of property to be distributed under the plan on account of the claim cannot be less than the allowed amount of the claim. Prior to BAPCPA, §1325(a)(5)(B)(ii) has been interpreted to require that the stream of payments provided by the plan equal the present value of its claim.[30] Since an "allowed secured claim" under §1325(a)(5) was synonymous with the value of the collateral under §506(c), the courts reasoned that interest was required to protect the creditor against the risk of loss in collateral value during the pendency of the case.[31] Measuring this risk in the form of the appropriate rate of interest was the subject of much discussion and ink.

---

[30] *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951, 158 L. Ed. 2d. 787 (2004)(plurality opinion).

[31] Both *Till, supra* note 30, and *Associates Commercial Corporation v Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) use the 'value of the collateral' and the 'value of the claim' interchangeably in defining the level of present value payments required under §1325(a)(5)(B)(ii). Although both *Till* and *Rash* were decided when "allowed secured claims" were synonymous with the value of the collateral as calculated under §506, there is no support, under existing jurisprudence, for distinguishing the section's directive that the present value of the *claim* be protected.

For the reasons set forth above, the changes in the Code under BAPCPA now calculate the hanging paragraph claimant's claim as that due under §502, or the entire pre-petition, accrued and unpaid balance without reference to the value of the collateral. Although it is contrary to all manner of previous thought, the literal reading of §1325(a)(5)(B)(ii) now results in protecting the present value of the *claim,* not just the value of the collateral.[32] Although this interpretation has been criticized by at least two courts, I can find no means to withhold interest on the claim if the provisions of §1325(a)(5) are otherwise applicable.[33] Short of finding that the hanging paragraph completely eliminates these claims from receiving the treatment provided under §1325(a)(5), I see no way to pick and choose which provisions of §1325(a)(5) must be honored.

BAPCPA may have modified other portions of the Code, but it did nothing to modify the jurisprudence under §1325(a)(5)(B)(ii). Under both *Till* and *Rash*, Debtor is still free to modify the terms of the claim under §1322. As a result, the creditor is entitled to the present value of its claim based on a *Till* formula rate. Because Debtor's Plan does not provide for the present value of the

---

[32] *Id.*

[33] *In re Wampler*, 345 B.R. 730 (Bankr. D.Kan. 2006) held that the claims were completely unsecured based on the hanging paragraph's exclusion of §506. Having so held, the Court then surmised that the entire claim, as calculated under §502, *must be paid in full* but without interest. Rather than include the claim with the unsecured class, the Court assumed that §1325(a)(5) still applied to the claim. However, in applying §1325(a)(5), the Court read out the requirement that the present value of the claim be protected. If the claim is unsecured as the *Wampler* Court believes, it is inexplicable to me why §1325(a)(5) would apply to its treatment. In such a case, the claim would be added to the unsecured class and enjoy only the benefits afforded that class. There is simply no justification for giving the claim secured creditor treatment. Similarly, in *In re Carver*, 338 B.R. 521 (Bankr. S.D.Ga. 2006) the Court also found the exclusion of §506 prohibited a finding of secured status. The *Carver* Court then fashioned a hybrid relief, akin to that afforded a secured claimant under §1111(b). With all due respect to my colleague, nothing in the legislative history would allow me to create both a separate classification and treatment for this claim just because it is unsecured. Again, if the claim is unsecured, it is unsecured and it is afforded no special treatment.

claim, but only that portion Debtor deemed secured, the Plan is not confirmable.  Under the facts

of this case, the plan must provide $9,027.00 in payments, with interest, as well as, payment of

$1,266.85 in accrued, pre-petition, interest charges, without interest.[34]

Adequate Protection

Under the Bankruptcy Code, adequate protection is a remedy generally available to creditors

during the administration of a case and prior to confirmation.  It is designed to protect a secured

claimant from a diminution in the value of its collateral during the pendency of a case and prior to

the implementation of a plan.  Once the plan is confirmed, the requirements of confirmation have

always dictated that the secured claim (historically calculated as an amount equal to the value of the

collateral) be paid in real, or present value, terms.  Thus, the payment of interest substitutes for

adequate protection by providing the present value of the claim.  The addition of a requirement for

adequate protection on confirmation is somewhat curious given that §1325(a)(5)(B)(ii) already

requires payments under the plan which equal the present value of the claim.  Thus, in order for this

provision to be relevant, the payment stream proposed by the plan would have to equal the present

value of the claim but not adequately protect the value of the collateral.  This situation might occur

if the collateral were depreciating at a rate greater than the level of plan payments.

In this case, Debtor is properly insuring the vehicle against risk of loss and holds additional

insurance in the form of an Extended Warranty and Deficiency Insurance contracts to protect herself

in the event repairs, or an accident, surreptitiously  reduce the vehicle's value.  The Plan also

provides for 8% interest on the stipulated value of the vehicle over the life of the Plan.  Capital One

---

[34]  Under the 1994 amendments to the Bankruptcy Code, arrearage charges do not bear
interest under §1325(a)(5)(B)(ii) unless allowed by state law.  Louisiana does not allow the
imposition of interest on interest, *see*, La.C.C. art. 2001 (West 1987).

failed to present any evidence at trial that  the terms of the Plan, including the payments proposed,

do not adequately protect its interest in the collateral.  Therefore, I find that the Plan satisfies the

provisions of  §1325(a)(5)(B)(iii)(II).

An Order Denying Confirmation will be entered separately.

New Orleans, Louisiana, September 29, 2006.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge